UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CINDY TYREE, an individual residing in the State,<br><br>Plaintiff,<br><br>v.<br><br>KIRK A. MELTON, an individual residing in the State of Idaho; RANDSLAW, PLLC, an Idaho professional limited liability company; J. JUSTIN MAY, an individual residing in the State of Idaho; JOHNSON MAY, PLLC, an Idaho professional liability company,<br><br>Defendants. | Case No. 1:24-cv-00231-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 12. Defendants seek to dismiss Plaintiff's second, third, and fourth causes of actions. For the reasons described below, the Court will grant the Motion but give Plaintiff leave to amend her Complaint.

### BACKGROUND

This lawsuit stems from Defendants' legal representation of Plaintiff Cindy

MEMORANDUM DECISION AND ORDER - 1

Tyree in a dispute involving her ownership interest in a family business, Northwest Foam Products, Inc (NWF). The following description of the nature and course of that dispute are taken from Tyree's complaint in this action. Tyree retained Defendants Kirk Melton and Randslaw, PLLC in late 2019. They filed a complaint in the underlying action in the Fifth Judicial District of the State of Idaho in March 2020 (docket number CV42-20-1302). Tyree came to believe that they were mishandling the lawsuit based on communication problems and their failure to meaningfully engage with her attempts to participate in the litigation. In May 2021, she engaged Defendants J. Justin May and Johnson May, PLLC to also assist with the case.

While the state lawsuit was unfolding, Tyree discovered that she had a twenty-five percent member interest in Ransom Properties, LLC and Ransom Commercial, LLC. May initially negotiated Tyree's separation from the two LLCs, but, in April 2022, Tyree informed May and Melton that she would use a different law firm to investigate and evaluate the companies. A few days later, Defendants allegedly filed a motion to amend Tyree's complaint without her knowledge or consent. She asked for clarification about the need for the amendment, which named individual NWF shareholders as defendants, but Defendants refused to explain beyond saying that it was the best thing for the case.

Discovery in the state case continued for several more months. Tyree says

that Defendants refused to fully explore relevant issues regarding corporate management, financial data, and business transactions. Specifically, they failed to (1) propound discovery on aspects of the relationships between NWF shareholders; (2) request production of corporate books and banking records; (3) engage expert witnesses on issues of corporate governance; (4) ensure that an outside expert audited the counterparties' books and records; (5) provide Tyree with the professional business valuation of NWF, which she had paid for; (6) carry out Tyree's factfinding requests based on her knowledge of NWF; (7) subpoena the valuation accountant used by the counterparties; (8) respond to Tyree's communications about her wishes for the litigation and mediation; and (9) explain or justify their refusal to follow her instructions. *First Am. Compl.* ¶ 19, Dkt. 3.

Tyree participated in a mediation in the underlying action on August 8 and 9, 2022. She did not receive any information about the mediation from Defendants until July 29, when Melton sent a brief email that failed to explain the process or its implications. On the first day of the mediation, she felt uncomfortable with Defendant's level of preparation – for example, they did not provide her with mediation statements or position papers – and informed them that she wanted to continue litigating toward trial. In response, May yelled at her and said that she would need to hire another attorney to litigate. On the second day, an issue arose about the valuation of the business, and Defendants refused to advocate for Tyree's

MEMORANDUM DECISION AND ORDER - 3

position. She again asked them to litigate the case, and May allegedly responded by yelling, "I'm not going to destroy a perfectly good business," and "I will not litigate." *First Am. Compl.* ¶ 21, Dkt. 3.

About a month later, Defendants presented Tyree with a finalized settlement agreement. She says that the agreement was not only negotiated without her consent, but also deviated from the "placeholder" stipulation developed in the mediation. Defendants did not fully communicate these changes to Tyree, nor did they seek her input about the substance of the terms. For example, she was unaware that the settlement was a "global resolution" agreement that addressed the disposition of Ransom Properties, Ransom Commercial, and a trust settled by her late father, in addition to the corporate issues at the heart of the underlying lawsuit.

Tyree then sought the advice of additional attorneys located in her new home state of South Carolina, and they attempted to address the shortcomings of the settlement agreement. In response, the counterparties in that action filed a motion to compel settlement, and Defendants threatened to withdraw as Tyree's counsel. Tyree signed the settlement agreement in October 2023 without the addition of any of the substantive changes recommended by her new attorneys. One particular issue was due diligence regarding the distribution of company assets, which were worth over $5 million. Defendants had not obtained all the relevant materials during discovery, and they again failed to request the

MEMORANDUM DECISION AND ORDER - 4

appropriate financial statements and valuations.

In February 2023, Melton and Randslaw filed notices of withdrawal from the case. May and Johnson May followed suit several weeks later. Tyree spent several months trying to obtain due diligence materials through her new counsel, but the counterparties in the underlying action refused to cooperate. In November 2023, those counterparties filed a new state action for breach of settlement, naming Tyree as the sole defendant (docket number CV42-23-4559).

In May 2024, Tyree filed this lawsuit against her former counsel. She brings claims for professional negligence, breach of contract, fraudulent concealment, and declaratory relief. Defendants now seek to dismiss all claims except professional negligence.

## LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a

defendant has acted unlawfully. *Twombly*, 550 U.S. at 570. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557. When assessing the plausibility of a plaintiff's claim, a court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

## ANALYSIS

1. **Breach of Contract**

Tyree alleges that Defendants' conduct as counsel constitutes both professional negligence and a contractual breach of their agreements to provide competent legal representation. Defendants argue that the breach of contract claim must be dismissed because legal malpractice in Idaho sounds in tort rather than contract law.

It is true that attorney-client relationships are commercial transactions, *see Pl.'s Opp'n* at 8, Dkt. 16, and that "legal malpractice actions are an amalgam of tort and contract theories." *Johnson v. Jones*, 652 P.2d 650, 655 (Idaho 1982). Indeed, under some circumstances, an attorney's misconduct can give rise to a breach of contract action. But the Idaho Supreme Court has specified that this is limited to "the failure to perform obligations directly specified in the written contract" – for instance, an attorney who was retained to draft a contract and

simply failed to do that. *Bishop v. Owens*, 272 P.3d 1247, 1251 (Idaho 2012). Legal malpractice actions, on the other hand, stem from the attorney's breach of professional duty to perform with a certain level of competence. *See id.* Although "[t]he scope of an attorney's contractual duty to a client is defined by the purposes for which the attorney is retained," legal malpractice and breach of contract actions are, for this reason, generally mutually exclusive. *Id.* at 1251-52. To hold otherwise, the court explained, "would create a per se breach of contract in every legal malpractice action." *Id.* at 1252.

Tyree's claim here mirrors the logic that the Idaho Supreme Court rejected in *Bishop*. Defendants had an agreement to provide legal representation, and Tyree alleges that they breached it "by failing to provide *competent* representation." *Pl.'s Opp'n* at 25, Dkt. 16 (emphasis added). She does not contend that they failed to perform responsibilities expressly provided in the contract. Rather, per the complaint, it is the attorneys' competence at issue, which makes breach of duty the essence of the action. As the court wrote in *Bishop*: "Thus, this action is really a legal malpractice claim disguised as a contract claim. A person cannot change a tort action into a contract action simply by labeling it as such." 272 P.3d at 1272.

Consequently, the Tyree's second cause of action must be dismissed.

2. **Fraudulent Concealment**

Tyree next pleads, in the alternative, that Defendants engaged in fraudulent

concealment of professional malfeasance. Defendants ask the Court to dismiss this claim because the complaint fails to plead fraud with the requisite particularity.

A plaintiff claiming fraudulent nondisclosure must show that (1) there was a nondisclosure; (2) she relied on the nondisclosure; (3) the reliance was material to the transaction; and (4) she suffered harm as a result. *Inv. Recovery Fund, LLC v. Hopkins*, 467 P.3d 406, 412 (Idaho 2020). Under Federal Rule of Civil Procedure 9(b), a plaintiff bringing a fraud claim "must state with particularity the circumstances constituting fraud" to survive a motion to dismiss – a much higher pleading standard than that of Rule 8(a). The Ninth Circuit Court of Appeal has detailed this requirement:

> The time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . To allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994).

Tyree sets out the following circumstances to substantiate fraudulent concealment: (1) Defendants failed to adequately conduct discovery; (2) they failed to coherently answer Tyree's questions about the case, especially discovery

**MEMORANDUM DECISION AND ORDER - 8**

matters; (3) they resorted to verbal abuse "as a means of deflecting from accountability and avoiding explanations or responses"; (4) they failed to competently prepare her for the mediation and refused to include her in the negotiation process; (5) they entered an unauthorized settlement by intentionally excluding her from negotiations and failing to provide her with relevant document drafts; and (6) they concealed material financial data and other documents relating to valuation. *First Am. Compl.* ¶ 54, Dkt. 3. She further explains that the omission was material and harmful because she could have brought further claims in the underlying action and obtained a better result in settlement.

The theory is that Defendants committed fraud by not disclosing material facts about their work on the case. But the allegations are light on details and in some cases do not involve concealment at all. The only specific nondisclosure appears to be the professional business evaluation of NWF, which Tyree paid for but counsel allegedly refused to provide. *Id.* ¶ 19(e). Even there, the Complaint neglects to provide information such as the timing of the valuation, the timing of Defendants' refusal to provide it, and the specific disadvantages incurred in the mediation due to the lack of this information. Tyree also suggests that Defendants concealed additional financial data and documents, but she does not identify them with any particularity. And other allegations speak to the malpractice claim but have nothing to do with fraud, such as the failure to adequately conduct discovery

**MEMORANDUM DECISION AND ORDER - 9**

or to prepare her for the mediation.

In short, Tyree has failed to meet her pleading burden. The allegation regarding the NWF evaluation and the conclusory statement that Defendants concealed "material financial data and other documents relating to the valuation of the entity counterparties" fall far short the Rule 9(b) mandate that a complaint must state the circumstances of fraud with particularity. For this reason, Tyree's third cause of action is dismissed.

### 3. Declaratory Relief

Tyree's final claim asks the Court for declaratory judgment to determine whether Defendants' alleged conduct "comported with both (a) the standards of care applicable to attorney-client relationships in the context of an action for professional negligence, and (b) the broader ethical obligations owed to [Tyree], including (without limitation) the duties of communication, competence, diligence, and action within the proper authority as contemplated by the applicable Idaho Rules of Professional Conduct." *Id.* ¶ 65. Defendants argue that declaratory relief is improper because Tyree simply repeats her claim for professional negligence.

Idaho Code § 10-1201 provides: "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed

for." The law "is to be liberally construed" and exists for the purpose of settling "uncertainty and insecurity with respect to rights, status, and other legal relations." *Id.* § 10-1212. Nonetheless, declaratory relief is suitable only "where it will accomplish some useful purpose," and it "cannot be invoked merely to try issues and determine questions which are uncertain and hypothetical." *Ennis v. Casey*, 238 P.2d 435, 438 (Idaho 1951). A declaratory judgment proceeding may "involve the determination of a disputed question of fact," but "it cannot be used where the object of the proceedings is to try such fact as a determinative issue." *Id.*

Here, Tyree's request for declaratory relief cannot be distinguished from her action for legal malpractice. Asking the Court to determine whether Defendants' actions comported with the applicable professional standard of care simply rephrases the professional negligence claim. As the Idaho Supreme Court observed in *Ennis*, "a declaratory judgment should be refused where the questions presented should be the subject of judicial investigation in a regular action." *Id.* And the issue of Defendants' broader ethical obligations is a question for the Idaho State Bar, not for this Court. *Kosmann v. Dinius*, 446 P.3d 433, 441-42 (Idaho 2019). A declaration in that regard is beyond the scope of the Court's responsibilities and, therefore, would accomplish no useful purpose. For these reasons, Plaintiff's fourth claim is dismissed.

**MEMORANDUM DECISION AND ORDER - 11**

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Dismiss (Dkt. 12) is **GRANTED** with leave to amend. Plaintiff shall file her amended complaint within 21 days of the date of this Order.

DATED: November 1, 2024

_____
B. Lynn Winmill
U.S. District Court Judge